IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
GREENVILLE DIVISION

TYRONE J. WALKER                                         PLAINTIFF

v.                                                       No. 4:11CV138-GHD-JMV

DENNIS WALKER, ET AL.                                    DEFENDANTS

## MEMORANDUM OPINION

This matter comes before the court on the *pro se* prisoner complaint of Tyrone J. Walker, who challenges the conditions of his confinement under 42 U.S.C. § 1983. For the purposes of the Prison Litigation Reform Act, the court notes that the plaintiff was incarcerated when he filed this suit. Walker alleges that while he was confined in the Leflore County Jail, officers shot at him with a pellet gun, confined him in Administrative Segregation without a mattress, blanket, or hygiene products, and that he was strip-searched every other day. Walker also alleges that the defendants denied him visitation, phone privileges, access to medical care, and recreation. Finally, Walker complains that the defendants forced him to take his prescribed medication and denied him adequate medical treatment. The defendants have filed a motion for summary judgment, and Walker has responded. Walker has conceded that the facts as set forth in the defendants' motion for summary judgment are accurates. The matter is ripe for resolution. For the reasons set forth below, the instant case will be dismissed for failure to exhaust administrative remedies and on the merits.

## Summary Judgment Standard

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c). "The moving party must show that if the evidentiary material of record were reduced to

admissible evidence in court, it would be insufficient to permit the nonmoving party to carry its burden." *Beck v. Texas State Bd. of Dental Examiners*, 204 F.3d 629, 633 (5th Cir. 2000) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986), *cert. denied*, 484 U.S. 1066 (1988)). After a proper motion for summary judgment is made, the burden shifts to the non-movant to set forth specific facts showing that there is a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 106 S. Ct. 2505, 2511, 91 L. Ed. 2d 202 (1986); *Beck*, 204 F.3d at 633; *Allen v. Rapides Parish School Bd.*, 204 F.3d 619, 621 (5th Cir. 2000); *Ragas v. Tennessee Gas Pipeline Company*, 136 F.3d 455, 458 (5th Cir. 1998). Substantive law determines what is material. *Anderson*, 477 U.S. at 249. "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Id.*, at 248. If the non-movant sets forth specific facts in support of allegations essential to his claim, a genuine issue is presented. *Celotex*, 477 U.S. at 327. "Where the record, taken as a whole, could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 89 L. Ed. 2d 538 (1986); *Federal Savings and Loan, Inc. v. Krajl*, 968 F.2d 500, 503 (5th Cir. 1992). The facts are reviewed drawing all reasonable inferences in favor of the non-moving party. *Allen*, 204 F.3d at 621; *PYCA Industries, Inc. v. Harrison County Waste Water Management Dist.*, 177 F.3d 351, 161 (5th Cir. 1999); *Banc One Capital Partners Corp. v. Kneipper*, 67 F.3d 1187, 1198 (5th Cir. 1995). However, this is so only when there is "an actual controversy, that is, when both parties have submitted evidence of contradictory facts." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994); *see Edwards v. Your Credit, Inc.*, 148 F.3d 427, 432 (5th Cir. 1998). In the absence of proof, the court does not "assume that the nonmoving party could or would prove the necessary facts." *Little*, 37 F.3d at 1075 (emphasis omitted).

## Undisputed Material Facts[1]

On March 22, 2011, Tyrone Walker arrived at Leflore County Jail. In the attachment to his Complaint, he states that "Captain Ward" shot him with a pellet gun numerous times and then took him to a cell with no mattress, blanket, property, or hygiene. Walker did not, however, recount the events in their entirety in his complaint or during his testimony at the *Spears* hearing. In their motion for summary judgment, the defendants have painted a more complete picture of the events as they unfolded. During initial intake, Walker became "loud and boisterous" and attempted to destroy state property. See March 22, 2011, Incident Reports, Exhibit A.[2] The defendants ordered Walker to comply with intake procedures, and he responded by assaulting one of the intake officers. *Id.* In an effort to quell the assault, Officer Harry Bradfield administered one two-second burst of pepper spray and escorted Walker to the shower for decontamination. *Id.* Shortly thereafter, Walker threatened to harm himself by tying a towel around his neck. *Id.* Shift supervisor Reggie Ward directed Walker several times to remove the towel but he refused to comply and threatened to kill himself and anyone who entered the shower area. *Id.* In response, supervisor Ward fired seven pepper ball rounds at Walker in an effort to gain his compliance. *Id.* Walker eventually complied, was handcuffed, and then escorted to medical for decontamination. *Id.* Medical records show that Walker did not suffer any injuries. See March 22, 2011, Medical Records, Exhibit B. The facility physician placed Walker on constant observation because he threatened suicide. *Id.* After Walker's medical evaluation, an officer escorted him to a segregation cell, and Walker was given a suicide smock and blanket. *Id.* Walker later received a disciplinary report for assault on a staff member.

---

[1] Walker conceded in his response to the defendants' motion for summary judgment that the facts set forth in the motion are accurate. As such, the court has used, with slight modifications, the facts as set forth in the defendants' memorandum in support of their motion for summary judgment.

[2] The court refers throughout the opinion to the exhibits attached to the defendants' motion for summary judgment.

Walker also claims that in the first three months of his incarceration at the Leflore County Jail he was kept in lockdown with nothing in his cell and forced to strip naked for a shake down every other day. He alleges that he was denied recreation, phone privileges, and visits. He also claims officers sprayed him on several occasions when he refused to go to medical and forced him to take medication prescribed to him by mental health personnel. Walker remained in lockdown at various points during his incarceration at the Leflore County Jail because he repeatedly threatened and assaulted staff, set fire to blankets in his cell, destroyed property, attempted to escape custody, and displayed suicidal tendencies. As a result of these incidents – for Walker's safety and that of other inmates and jail staff – Walker's privileges were restricted or limited. The following is a summary of incidents involving Walker during his ten-month incarceration at LCJ.

> 4/29/11 Officers direct Plaintiff to stop popping cell door. He responded by threatening bodily harm to staff with broom handle. Plaintiff escorted to segregation by Tyrone Banks. Plaintiff snatched handcuff and keys from Unit Manager Banks. Once in cell, Plaintiff began kicking door resulting in property damage. Banks directed Plaintiff to stop twice and then administered one two-second burse of pepper spray when Plaintiff did not comply. Plaintiff later reported that he had swallowed keys. *See 4/29/11 Incident Reports and Medical Records, collectively Exhibit C.*

> 4/30/11 Plaintiff set fire to a blanket in his cell. Unit Manager Tyrone Banks directed Plaintiff twice to exit cell and get on his knees due to smoke. When Plaintiff refused to comply, Banks administered one burst of pepper spray. Plaintiff later transferred to Greenwood Leflore Hospital for smoke inhalation. *See 4/30/11 Incident Reports and Medical Records, collectively Exhibit D.*

> 5/1/11 Plaintiff admitted to Greenwood Leflore Hospital for stomach pain. Xray reveals metallic foreign bodies in abdomen. *See 5/1/11 Medical Records, Exhibit E.*

> 6/13/11 Plaintiff assaulted Unit Manager Tyrone Banks. During the assault, Banks administered a one two-second burst of pepper spray. *See 6/13/11 Incident Reports and Medical Records, collectively Exhibit F.*

> 7/20/11 Plaintiff kicked door off cell. *See 7/20/11 Medical Record, Exhibit G.*

> 11/30/11 Plaintiff broke tray flap to his assigned cell. During his escort to another cell, Plaintiff became hostile and made threatening advances towards officer. Officer

administered one burst of pepper spray to gain compliance. *See 11/30/11 Incident Reports and Medical Records, collectively Exhibit H.*

12/28/11 Plaintiff snatched handcuffs and keys from Unit Manager Tyrone Banks. Banks issued several directives for Plaintiff to return the handcuffs and keys. When Plaintiff did not comply, Banks administered one burst of pepper spray. Plaintiff was later transferred to Greenwood Leflore Hospital after reporting that "he might have swallowed some keys." *See 12/28/11 Incident Reports and Medical Records, collectively Exhibit I.*

12/29/11 Reports of Plaintiff beating on door with a brown tray and flooding his cell. *See 12/29/11 Medical Record, Exhibit J.*

Walker also claims that on or about November 18, 2011, he went to the hospital for chest pains and was denied medical treatment at the Warden's request. Specifically, Walker alleges that he did not receive an ECG. Walker reported chest pains and was transferred to Greenwood Leflore Hospital for treatment. However, contrary to Walker's Complaint, three ECGs were performed. *See ECGs, collectively Exhibit K.*

Finally, Walker alleges that he filed a grievance on or about June 5, 2011, but never received a response. He further claims that defendant Tyrone Banks instructed him not to complete another grievance. The defendants, however, have no record that Walker ever filed a grievance. The only grievance Walker alleges to have filed was submitted on June 5, 2011, and that he did not otherwise attempt to exhaust his administrative remedies.

### Exhaustion of Administrative Remedies

The Prison Litigation Reform Act states, in pertinent part:

No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

42 U.S.C. § 1997e(a). Tyrone Walker does not dispute that a formal grievance procedure was in place at the time of his incarceration in the Leflore County Jail. A district court may dismiss a lawsuit if the plaintiff fails to complete the grievance process. *Underwood v. Wilson*, 151 F.3d 292, 293 (5th Cir.

1998), *cert. denied,* 119 S. Ct. 1809, 143 L. Ed. 2d 1012 (1999) (quoting *Rocky v. Vittorie,* 813 F.2d 734, 736 (5th Cir. 1987)). While the exhaustion requirement is not jurisdictional, *id.* at 293-95, "[a]bsent a valid defense to the exhaustion requirement, the statutory requirement enacted by Congress that administrative remedies must be exhausted before the filing of suit should be imposed." *Wendell v. Asher,* 162 F.3d 877, 890-91 (5th Cir. 1998); *Smith v. Stubblefield,* 30 F.Supp. 2d 1168, 1170 (E.D. Mo. 1998). "To hold otherwise would encourage premature filing by potential litigants, thus undermining Congress' purpose in passing the PLRA, which was to provide the federal courts some relief from frivolous prisoner litigation." *Wendell,* 162 F.3d at 981 (citations omitted).

Walker alleges in his response to the motion for summary judgment the defendants refused to respond to his June 5, 2011, grievance regarding these allegations, though he does not specify the nature of the grievance or the times any incidents occurred. The defendants have alleged in their motion for summary judgment that the jail has no record that Walker ever filed a grievance during his incarceration there. A prisoner's grievance is deemed exhausted when prison officials fail to respond to it within the appointed time period. *Powe v. Ennis,* 177 F.3d 393 (5th Cir. 1999). As Walker has alleged that he submitted a grievance on June 5, 2011, and that the defendants never responded, the court finds that he has exhausted his administrative remedies as to the allegations occurring prior to that date: (1) shooting Walker with a "pellet gun," (2) placement in isolation with no mattress, blanket, property, or hygiene items, and (3) strip-searches every other day. Walker has not, however, exhausted administrative remedies regarding his remaining allegations, which occurred after he filed his grievance on June 5, 2011: (1) forcing him, using chemical agents to, receive medical and psychiatric care, (2) forcing him to take his prescribed medication, and (3) refusal to permit an EKG at the local hospital. Thus, these last three claims will be dismissed for failure to exhaust administrative remedies.

## Denial of Adequate Medical Care

In order to prevail on an Eighth Amendment claim for denial of medical care, a plaintiff must allege facts which demonstrate "deliberate indifference to the serious medical needs of prisoners [which] constitutes 'unnecessary and wanton infliction of pain' proscribed by the Eighth Amendment . . . whether the indifference is manifested by prison doctors or prison guards in intentionally denying or delaying access to medical care . . . ." *Estelle v. Gamble*, 429 U.S. 97, 104-105, 50 L. Ed. 2d 251, 260 (1976); *Mayweather v. Foti*, 958 F.2d 91, 91 (5th Cir. 1992). The test for establishing deliberate indifference is one of "subjective recklessness as used in the criminal law." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994). Under this standard, a state actor may not be held liable under 42 U.S.C. § 1983 unless plaintiff alleges facts which, if true, would establish that the official "knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 838. Only in exceptional circumstances may a court infer knowledge of substantial risk of serious harm by its obviousness. *Id.* Negligent conduct by prison officials does not rise to the level of a constitutional violation. *Daniels v. Williams*, 474 U.S. 327, 106 S.Ct. 662 (1986), *Davidson v. Cannon*, 474 U.S. 344, 106 S.Ct. 668 (1986). This same subjective deliberate indifference standard has been applied to pre-trial detainees under the Fourteenth Amendment as well as convicted inmates under the Eighth Amendment. *See Hare v. City of Corinth*, 74 F.3d 633, 648 (5th Cir. 1996). A prisoner's mere disagreement with medical treatment provided by prison officials does not state a claim against the prison for violation of the Eighth Amendment by deliberate indifference to his serious medical needs. *Gibbs v. Grimmette*, 254 F.3d 545 (5th Cir.2001), *Norton v. Dimazana*, 122 F.3d 286, 292 (5th Cir. 1997).

The facts of this case, as set forth in the defendants' motion for summary judgment and supporting memorandum, simply do not state a claim for denial of adequate medical care. Though Walker claims that he had chest pains and never received an ECG, the medical records show that he, indeed, received three of them. Walker's other two claims – regarding the use of force to compel him to submit to medical and psychiatric treatment – are not claims for denial of adequate medical care, but claims for use of excessive force. Indeed, the defendants were trying to get Walker the treatment he clearly needed, but refused. These allegations fail to state a valid constitutional claim and must be dismissed.

### Excessive Force

Walker makes several claims that prison officials used excessive force against him in violation of the Eighth Amendment. In order to balance the constitutional rights of convicted prisoners with the needs of prison officials to effectively use force to maintain prison order, the Supreme Court has held that to establish liability on the part of defendants the plaintiff must prove the force was applied "maliciously and sadistically to cause harm," and not "in a good-faith effort to maintain or restore discipline . . . ." *Hudson v. McMillian*, 503 U.S. 1, 6-7, 112 S. Ct. 995, 117 L. Ed. 2d 156 (1992) (citing *Whitley v. Albers*, 475 U.S. 312, 320-21, 106 S. Ct. 1078, 89 L. Ed. 2d 251 (1986)); *see Rankin v. Klevenhagen*, 5 F.3d 103 (5th Cir. 1993). Walker has conceded that the defendants' recitation of the facts, set forth above, is accurate. The facts paint a clear picture of Walker as an out-of-control mentally ill inmate who would not comply with the orders of jail staff, even when threatened with force in the form of a chemical agent. The use of force – and threatened use of force – to compel Walker to take medications to treat his psychiatric conditions was clearly a good-faith effort to maintain or restore discipline, rather than an malicious and sadistic attempt to cause harm. Such uses of force to compel medical treatment are not excessive. *See O'Malley v. Litscher*, 465 F.3d 799 (7th

Cir. 2006) (restraint and subsequent force-feeding of an inmate, resulting in several failed attempts to insert an intravenous line, and burns to his back caused by lying in his own vomit did not amount to excessive force); *Sullivan v. Bornemann*, 384 F.3d 372 (7th Cir. 2004) (temporary restraint and cathertization in emergency room of arrestee with high level of alcohol was acceptable and not unconstitutional); *Tinius v. Carroll County Sheriff Dept.*, 321 F. Supp. 2d 1064 (N.D. Iowa 2004) (restraint was necessary for hospital personnel to cathertize to obtain a urine sample from incoherent detainee for diagnostic purposes); *Henderson v. Belfueil*, 354 F. Supp. 2d 889 (W.D. Wis. 2005) (using force to obtain a blood sample). *See also* Tracey M. Ohm, What They Can Do About It: Prison Administrators' Authority to Force-Feed Hunger-Striking Inmates, 23 Wash. U.J.L. & Pol'y 151 (2007) (discussing the need for the American Correctional Association or the Bureau of Prisons to develop hunger-strike response standards similar to those used by the Immigration and Naturalization Services, that would pass the *Turner* test and would allow forced medical treatment when there is a risk to life or permanent health). The Fifth Circuit has also permitted use of force to compel inmates to submit to medical care when the inmates challenged the practice on Due Process grounds. *McCormick v. Stalder*, 105 F.3d 1059 (5th Cir. 1997).

In addition, as to each of the incidents of force Walker has described in his complaint, the defendants were clearly trying to get control of an out-of-control inmate who was a danger to himself and others. The facts of the incidents are recounted above and will not be repeated here. The defendants used the force necessary to bring each situation under control, and each time Walker was examined and treated by medical personnel, who noted no injuries. The plaintiff's claims regarding use of excessive force must be dismissed for failure to state a claim upon which relief could be granted.

## *Respondeat Superior*

Section 1983 liability cannot be predicated upon a *respondeat superior* theory. *Monell v. Department of Social Services*, 436 U.S. 658, 691 (1978). For a plaintiff to state a viable cause of action pursuant to § 1983, he must "identify defendants who are either personally involved in the constitutional violation or whose acts are causally connected to the constitutional violation alleged." *Woods v. Edwards*, 51 F.3d 577, 583 (5th Cir. 1995) (citing *Lozano v. Smith*, 718 F.2d 756, 768 (5th Cir. 1983)). In this case, the plaintiff does not allege that Ricky Banks had any personal involvement or was causally connected to the alleged incident in any way. As such, the plaintiff's claims against Ricky Banks must be dismissed for failure to state a constitutional question.

## Classification

Walker also claims that he was placed in administrative segregation without a proper hearing. Inmates have neither a protectable property or liberty interest to any particular housing assignment or custodial classification, either under the United States Constitution or under Mississippi law. *Hewitt v. Helms*, 459 U.S. 460, 468 (1983); *Meachum v. Fano*, 427 U.S. 215, 224 (1976); *Neals v. Norwood*, 59 F.3d 530, 533 (5th Cir. 1995); Wilson v. Budney, 976 F.2d 957, 958 (5th Cir. 1992); *McCord v. Maggio*, 910 F.2d 1248, 1250 (5th Cir. 1990) (citations omitted); Miss. Code Ann. §§ 47-5-99 to -103 (1993). Prisoner classification is a matter squarely within the "broad discretion" of prison officials, "free from judicial intervention" except in extreme circumstances. *McCord*, 910 F.2d at 1250 (citations omitted). Walker complains that he was placed in isolation, lost many privileges, and was strip-searched every other day. Given Walker's outrageous and dangerous behavior, jail officials were circumspect in isolating Walker from other inmates, restricting his privileges, and searching him for dangerous objects and contraband. This claim is without merit and will be dismissed.

## Injunctive Relief Has Become Moot

When an inmate is transferred away from the facility about which he complains, any of his requests for injunctive relief become moot. As Walker has been transferred to another facility, his claims for injunctive relief in the instant case must be dismissed as moot. *See Oliver v. Scott*, 276 F.3d 736 (5th Cir. 2002).

## Conclusion

As set forth above, Walker's allegations involving incidents occurring after June 5, 2011, will be dismissed for failure to exhaust administrative remedies. These claims are: (1) forcing him, using chemical agents to, receive medical and psychiatric care, (2) forcing him to take his prescribed medication, and (3) refusal to permit an EKG at the local hospital. In addition, for the reasons set forth above, all of Walker's claims will be dismissed for failure to state a claim upon which relief could be granted. The motion by the defendants for summary judgment will be granted in all respects. A final judgment in accordance with this memorandum opinion will issue today.

**SO ORDERED**, this, the 16th day of July, 2014.

_____
SENIOR JUDGE